This is a bill in equity, the object of which is to obtain a new trial of an ejectment, upon the trial of which in the circuit court for the county of Roane a verdict was given for the defendant. A new trial was not moved for; and divers reasons have been urged at the bar for retaining the bill in this court, all which will appear without specifically reciting the contents in the remarks which will be made upon it. The defendant has demurred, and insists that he ought not to be compelled to answer it. The right to a recovery by the plaintiff seems to be probable. If any part of the bill be a sufficient foundation for relief, the demurrer going to the whole bill ought to be overruled. It is urged in support of this bill that the remedy at law by ejectment was once plain, yet now, by the verdict and judgment, the plaintiff will suffer injustice unless this court *Page 89 
will interfere. He has still the same remedy. He may bring a new ejectment. Should this court order a new trial, and upon the return of a verdict decree that the defendant should take no benefit of the judgment complained of, he would remain in possession still, and the plaintiff would still be obliged to bring an ejectment to recover possession. The decree would not settle the controversy. This court can not reverse the judgment. Should a decree be made for the plaintiff? Could we award a writ of possession and turn the defendant out? It could not be done. And if it could, is it agreeable to the genius of our laws to bind the inheritance by a single verdict in favor of the plaintiff? No. The parties should be left at liberty till so many verdicts shall be given for a defendant as to induce this court to interfere for his protection against vexation. Should we decree that the defendant shall be perpetually enjoined from claiming the lands in question, would we not thereby preclude him from any ejectment he might think proper to bring, and by a single trial bind him for ever? If a trial at law be in its nature final, and injustice be done to either party, without any default in him either in pleading or producing testimony which it was in his power to produce, then, indeed, this court would interfere. Again, it is urged that the defendant's witnesses were corrupted, and the influence of powerful men exerted to produce the verdict. It is not expressly charged that such influence was used and had its effect. But had it been expressly stated, the answer is, you ought to have changed the venue; if replied to this that the danger was not perceived till too late to move for a change of venue; the answer is, he may now sue and change the venue. If it be said that thereby the plaintiff will be burdened with the costs of the ejectment, the answer is, we ought not to grant a new trial merely for the sake of costs; the accessory should follow the principal, not the principal the accessory. The law *Page 90 
gives costs to the defendant; to let the judgment remain, and to deprive the defendant of costs, would be a direct evasion of the legal rule, established by the Act of Assembly. A court of equity has no right to do it. The venue can be changed in ejectment as well as in any other action. The defendant, it is said, has obtained a grant on false suggestions. Answer: if he obtained a letter-patent on lands within the plaintiff's grant, there is no necessity for repealing his grant; the plaintiffs, having the elder one, may recover against him. He that holds by a latter grant might perhaps impeach the former, and show that it was obtained from the State under circumstances which made it voidable. When the grant is impeached by allegations aimed directly against its existence, the act of repealing it is one which ought to be performed with all possible caution and circumspection, — we would say, with fear and trembling. Shall we do it then, in a collateral way, upon a complaint the principal object of which is to save the costs of an ejectment? Dunlap, it is said, has a forged grant adjoining Blount's grant, and takes in the lands in question if the boundary be where Garen says it is. Blount has no right to complain of this, for it injures him not at all; if the lands in question be not in the bounds of his grant, the State or her assignee is only injured by it. He claims also, it is said, under Dunlap and Trimble, by a sale of the lands in question for taxes. This sale is of no validity for any part of Blount's lands; for the purchase was of lands supposed to belong to another. It is said that discovery of the boundaries is wanted from Garen. Answer: if that were really requisite, it ought to have been applied for before the trial, to be used as evidence on it; not come after trial and stop the execution of the judgment for not coming in time. This land, it is said, may have been sold to divers persons, and they will be disturbed. Answer: they do not appear, nor *Page 91 
do they threaten to bring many actions against the complainant which may be settled by a bill. They are not parties to this bill, nor named in it. It is said many grants and titles derived under them are bounded by the lines of Blount's survey. Answer: for aught we know, they may be satisfied whether the one or the other of the lines in controversy between Blount and Garen be established. We must not interfere for them till they call upon us. It is said Garen encouraged M'Amy to purchase the lands in controversy, and showed him the line which he now disputes as the line of Blount's patent. Answer: he had no title at the time when he showed this line. He did not intend to deceive the purchaser and afterwards proceed against him upon his pre-existent and concealed title. That would have been a fraud, which would subject him to be hindered by injunction from recovering against the purchaser. If he afterwards obtained a grant and the lands were really vacant, he has only exercised a right of appropriation which he had in common with any other citizen. It is said he was a tenant of these lands under Blount's title for many years. Answer: that obliges him, whilst in possession, not to dispute the title of Blount, and not to betray the confidence reposed in him by delivering possession to another. But this confidence and correspondent obligation ceases when the connection as landlord and tenant ceases. He gave the possession to Blount when his lease or tenancy determined. He restored to him the possession as he, Blount, had it before. It is said he claimed by a grant which he says covered the land, not by occupancy entitling him to a grant. He can not say this occupancy Garen held for me, for he never contemplated to obtain a grant by means of it, or in any other way. It is said the plaintiff ought to be allowed to come here for an account of mesne profits. *Page 92 
Answer: mesne profits are consequent upon the establishment of the plaintiff's title; it is time enough to give him them after he has regained the possession by legal means. At any time, the Court will not entertain a bill for mesne profits, unless the application be founded on some circumstance which, at the same time that it shows the justice of the demand, presents difficulties which announce that it can not be rendered available at law.
Allow the demurrer.